IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY T. MOORE, Jr., #446508, )
*and all others similarly situated*, )
                                    **Plaintiff,** )
 
vs. )       Case No. 17-cv-01285-JPG
 
SECURUS TECHNOLOGIES, INC., )
ST. CLAIR COUNTY, ILLINOIS, )
RICHARD WATSON, and )
AUSTIN EVERETT, )
                                    **Defendants.** )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Anthony Moore, Jr., a detainee at St. Clair County Jail ("Jail"), brings this action to challenge the taxes and rates for inmate phone calls at the Jail. (Doc. 1). Plaintiff[1] asserts numerous claims under 42 U.S.C. § 1983, the Sherman Act, the Federal Communications Act, the Racketeering Influenced Corrupt Organizations Act, and Illinois law against Securus Technologies, Inc. (telecommunications company), St. Clair County, Richard Watson (sheriff), and Austin Everett (commissary supervisor). (Doc. 1, pp. 1-2). He seeks declaratory judgment, monetary damages, and injunctive relief. (Doc. 1, pp. 13-14).

This case is before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

    (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a

---

[1] Plaintiff indicates that he is bringing this action on behalf of himself and "all others similarly situated." (Doc. 1, p. 1). However, no other plaintiff appears to be involved in this action. No one else is listed as a Plaintiff. Further, a prisoner bringing a *pro se* action cannot represent a class of plaintiffs. *See Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 831 (7th Cir. 1986); FED. R. CIV. P. 11.

1

> prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Securus Technologies, Inc. allegedly provides telecommunications services to inmates in state prisons and county jails nationwide. (Doc. 1, p. 6). Securus services the majority of state and local correctional facilities. *Id*. The telecommunications company has allegedly established itself as a monopoly by offering "bribes" and "kickbacks" to state and local governments. (Doc. 1, p. 7).

Since doing so, the company has also increased its rates and surcharges for inmate phone calls. (Doc. 1, p. 7). Securus charges a tax and rates of "at least" $0.20 per minute for every out-of-state call. *Id*. The company charges almost 10 times this amount for in-state phone calls. *Id*.

Each facility charges different rates and taxes. (Doc. 1, p. 7). By way of example, Plaintiff alleges that he paid $3.95 for a 30-minute in-state call at Menard Correctional Center ("Menard"). *Id*. At the Jail, he pays a $4.11 "intrastate call fee" in addition to $0.59 per minute for in-state calls. *Id*. A 15-minute call from the Jail costs $12.96. *Id*. In contrast, an out-of-state call from the Jail costs $0.21 per minute, and no "interstate call fee" is charged. *Id*. With local, state, and federal taxes, the total cost of a 15-minute telephone call is approximately $4.20. *Id*.

Although Securus allows family members to set up prepaid accounts for inmates, the company charges a fee for doing so. (Doc. 1, p. 8). Securus also allows only 3-5 telephone numbers for each account. *Id*. Once the funds on prepaid accounts run out, a new account and new activation fee is required. *Id*.

Securus also allows inmates to make collect calls to individuals who establish "post-paid" accounts. (Doc. 1, p. 8). These individuals are sometimes charged more than once for a single call. *Id*. Securus does not refund the overpaid amount. *Id*.

Securus also offers prepaid phone cards, although the Jail does not. (Doc. 1, p. 8). The company offers no refund for prepaid calling cards that have a remaining balance at the time an inmate is transferred. *Id*. The calling card also lists no local access number or customer service number for use in resolving billing and fee disputes. *Id*.

Plaintiff alleges that he has been subject to these calling restrictions, costs, and taxes at different times since 2012. (Doc. 1, p. 9). Sheriff Watson and Commissary Supervisor Everett were responsible for entering into a contract with Securus for calling services at the Jail. *Id*. In exchange for the contract, they were allegedly given "kickbacks" and "site commissions," which consisted of a percentage of the profits on inmate phone calls. *Id*. The funds were then used to pay for local ambulance services, employee pensions, and employee bonuses. (Doc. 1, p. 6). To

recoup this amount, Securus implemented the "tax" on outgoing inmate calls, hiked rates, and instituted per-call fees. *Id*. Watson and Everett informed Plaintiff that he would be subject to the taxes on outgoing phone calls. *Id*. He objects to them as excessive and as limiting his contact with family and friends. (Doc. 1, pp. 9-10).

**Merits Review Under 28 U.S.C. § 1915A**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* Complaint into the following enumerated counts:

> **Count 1**: Fourteenth Amendment due process and takings claims against Defendants for overcharging Plaintiff for phone services.
>
> **Count 2:** Miscellaneous federal claims against Defendants for allowing Securus to form a monopoly and overcharge inmates under the Federal Telecommunications Act, 47 U.S.C. §§ 201(b), 202, and 206, Racketeering Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961(5) and 1964(c), and Sherman Antitrust Act, 15 U.S.C. 1, *et seq*.
>
> **Count 3:** Miscellaneous Illinois state law claims against Defendants for unjust enrichment, fraud, civil conspiracy, unspecified constitutional violations, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding the merits. **Any claims not identified above but encompassed by the allegations in the Complaint are considered dismissed without prejudice from this action.**

**Discussion**

The Complaint does not survive preliminary review. Prisoners are not entitled to use the telecommunications company of their choice, and Plaintiff's objection to the use of Securus gives rise to no constitutional claim. Without any infringement on an inmate's constitutional

4

rights, the courts generally will not interfere with the administration of a correctional facility. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

With that said, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). Unreasonable restrictions on a prisoner's telephone access may violate the First and/or Fourteenth Amendment. *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991). But reasonable access to a telephone does not mean unlimited telephone use or use of a particular telephone provider at a particular rate. *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989), *cert. denied*, 493 U.S. 895 (1989). Prison administrators are generally free to determine which telephone service to provide, subject to "court scrutiny for unreasonable restrictions." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986).

The Seventh Circuit has already considered the claims that Plaintiff now raises and concluded that they lack merit.[2] *Arsberry v. State of Illinois*, 244 F.3d 558 (7th Cir. 2001). In *Arsberry*, a group of Illinois inmates, their family members, and a public interest law firm challenged the practice at Illinois prisons and jails of granting one telephone company exclusive rights to provide inmate phone services in exchange for a percentage of revenues generated. *Id*. at 561. Plaintiffs maintained that the rates and taxes charged by the phone company were exorbitant. *Id*. They challenged the practice under § 1983, the Sherman Act, and state law. *Id*. The Court also considered the application of the Federal Communications Act to their claims. *Id*.

---

[2] While it appears that Plaintiff's Complaint presents a number of insurmountable jurisdictional hurdles, the Seventh Circuit in *Arsberry* found that none foreclosed the entire action. *Arsberry*, 244 F.3d at 561-65. After discussing the jurisdictional impediments posed by the filed-rate doctrine and the doctrine of primary jurisdiction, among others, the Court ultimately held that neither removed the entire suit from the jurisdiction of the district court. *Id*. at 562. Even so, the Court went on to find that the claims were meritless. *Id*. at 567.

The Seventh Circuit found no colorable claim for a constitutional violation under § 1983. With regard to the Fourteenth Amendment equal protection claim, the Court determined that plaintiffs were not challenging a tax that was, in some way, discriminatory, but rather a tariffed phone rate. *Id*. at 565. Challenges to tariffed phone rates fall within the primary jurisdiction of the telephone regulators, not the district court. *Id*. As for any claim that the plaintiffs were deprived of a liberty interest associated with competition for inmate phone services or the right to make or receive prison visits with family, the Court found that the claim lacked "procedural dimension." *Id*. This is because the defendants did not deprive the inmates of a means to challenge the inmate telephone rates in the regulatory agencies. *Id*. The Court went on to find no substantive due process right. *Id*. at 566. *Arsberry* also foreclosed relief based on telephone rates under the Takings Clause. *Id*. at 564-66.

The Court acknowledged that a First Amendment right may be implicated in the context of phone conversations, but not as it relates the choice of carrier or related fees and taxes:

> It is true that communications the content of which is protected by the First Amendment are often made over the phone, but no one before these plaintiffs supposed the telephone excise tax an infringement of free speech. . . . Communications protected by the amendment are also frequently made by printing words on paper, yet no one supposes that the consequence is to bring the corporate income tax, when imposed on manufacturers of paper, within the purview of the First Amendment, or even to forbid taxing those manufacturers more heavily than manufacturers of products of communications media.

*Id*. at 564 (citations omitted). Further, the Court found no suggestion that the scheme was motivated by any desire to limit free speech. *Id*. As here, the plaintiffs in *Arsberry* contend that the scheme was instead motivated by "pure greed," and Plaintiff has not even raised a First Amendment claim in the Complaint. *Id*.

The Sherman Act claim also failed. The Court pointed out that the claim requires a showing that the phone companies "worked together to divide the inmate phone market, using

6

state officials as their cat's paws." *Id*. at 566 (citations omitted). The officials, not the phone companies, acted as principals in *Arsberry*. *Id*. The same is true in the instant case.

In fact, this case appears to be no different than *Arsberry*, and the Court finds that dismissal of Counts 1 and 2 is warranted at this time. Count 3 consists entirely of state law claims, and the Court declines to exercise supplemental jurisdiction over those claims. 28 U.S.C. § 1367(c).

**Disposition**

**IT IS HEREBY ORDERED** that the **COMPLAINT** (Doc. 1), including **COUNTS 1, 2, and 3**, is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Defendants **SECURUS TECHNOLOGIES, INC., ST. CLAIR COUNTY, RICHARD WATSON,** and **AUSTIN EVERETT** are dismissed without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice, based on his failure to demonstrate sufficient attempts to locate counsel on his own before seeking the Court's assistance. He "contacted" two law offices and did not hear back from them. *See Armstrong v. Krupiczowicz*, 874 F.3d 1004, 1008 (7th Cir. 2017) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (*en banc*)) (a district court faced with a request for counsel must ask whether the indigent plaintiff made a reasonable attempt to obtain counsel or was effectively precluded from doing so, and, if so, does the plaintiff appear competent to litigate the matter himself given the difficulty of the case?). Plaintiff may renew his request once he can demonstrate his actual efforts to retain counsel, either by describing his efforts in his motion, by attaching copies of letters regarding his requests, or both.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff must file his First Amended Complaint on or before (**April 16, 2018**).  Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims.  FED. R. APP. P. 41(b).  *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).  Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

Should Plaintiff decide to file a First Amended Complaint, it is strongly recommended that he use the forms designed for use in this District for such actions.  He should label the form, "First Amended Complaint," and he should use the case number for *this* action (*i.e.,* 17-cv-1285-JPG).  The pleading shall specify, *by name*, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant.  Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors.  Plaintiff should refrain from filing unnecessary exhibits.  Plaintiff should *include only related claims* in his amended complaint.  Claims that are unrelated to one another or involve different groups of defendants will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to a complaint.  Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended

Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A. No service shall be ordered on any defendant until after the Court completes its § 1915A review of the First Amended Complaint.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

**IT IS SO ORDERED.**

**DATED: March 19, 2018**

s/J. Phil Gilbert
**District Judge**
**United States District Court**
